UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANCIS LOPEZ, an individual,

                        Plaintiff,

     vs.

DAILY HARVEST, INC., and SECOND BITE
FOODS, INC., d/b/a "STONE GATE FOODS",
SMIRK'S LTD., MOLINOS ASOCIADOS SAC,
AND JOHN DOE CORPORATIONS 1-5,

                      Defendants.

**COMPLAINT FOR DAMAGES
AND JURY DEMAND**

Civil Action No.:

## INTRODUCTION

Plaintiff Francis Lopez, by and through his attorneys, Heisman Nunes & Hull LLP and Marler Clark, LLP PS, alleges upon information and belief as follows:

## PARTIES

1.1      Plaintiff Francis Lopez is a resident of Arlington, Virginia, in the County of Arlington, and is therefore a citizen of the state of Virginia.

1.2      Plaintiff consumed an adulterated and/or harmful food product, namely prepared "French Lentil + Leek Crumbles," manufactured, packaged, distributed and sold by Defendant Daily Harvest, Inc.

1.3      Defendant Daily Harvest, Inc., (hereinafter "Defendant" or "Daily Harvest") is incorporated in the State of Delaware with headquarters and principal place of business located at 1115 Broadway, Suite 1105, New York, NY 10010, in the County of New York, and is therefore a citizen of both the State of Delaware and the State of New York and subject to the personal jurisdiction in this Court.

1.4     Defendant Daily Harvest manufactured, packaged, distributed, and/or sold an adulterated and/or harmful food product, namely "French Lentil + Leek Crumbles," to Plaintiff's wife.  On information and belief, Daily Harvest also developed the recipe for the prepared food product that caused Plaintiff's injuries as alleged in this complaint.

1.5     Defendant Second Bite Foods, Inc., d/b/a "Stone Gate Foods," (hereinafter "Defendant" or "Second Bite") is incorporated in the State of Minnesota with its principal place of business located at 5365 Shore Trail, Prior Lake, MN 55372. Therefore, Defendant Second Bite is a citizen of the State of Minnesota.

1.6     Defendant Second Bite owns and operates a manufacturing facility located at 4218 Valley Industrial Blvd. S. in Shakopee, MN. At this place of business, at all times relevant, Second Bite manufactured frozen fruits, juices, vegetables, and specialty foods, including specialty foods and other foodstuffs for Defendant Daily Harvest. Second Bite manufactured, for Daily Harvest, the French Lentil + Leek Crumbles product that is the source of the subject outbreak and was the cause of Plaintiff's illness and injuries.

1.7     Defendant Smirk's Ltd. (hereinafter "Smirk's") is a limited liability company formed under the laws of the State of Colorado with its principal place of business located at 17601 US Highway 34, Fort Morgan, CO 80701. Smirk's is therefore a citizen of the State of Colorado.

1.8     Defendant Smirk's owns and operates a specialty product supply shop, and at all times relevant supplied tara flour to Defendant Second Bite for use in manufacturing the French Lentil + Leek Crumbles product that was identified as the source of the subject outbreak and was the cause of Plaintiff's illness and injuries.

1.9     Defendant Molinos Asociados SAC is a Peruvian company owned by Herbert Telge, with a principal place of business located at Calle 2 Mz.N Lt.4 Las Vertientes, Villa El Salvador, Lima, Peru. Defendant Molinos is therefore a foreign citizen of Peru.

1.10    At all times relevant, Defendant Molinos was a processor and distributor of tara products. Molinos manufactured and distributed the subject tara flour, which was the source of the subject outbreak, to Defendant Smirk's at its principal place of business in Fort Morgan, Colorado.

1.11    Defendants John Doe Corporations 1-5, inclusive, whose identities are currently unknown, are manufacturers, distributors, importers, packagers, brokers, and/or growers of the "French Lentil + Leek Crumbles" product, and/or its constituent ingredients, that caused Plaintiff's illness as well as the illnesses of other individuals sickened as a result of the subject outbreak. These defendants are in some manner responsible for the acts, occurrences, and transactions set forth herein, and/or are the partners and/or alter ego(s) of the Defendant(s) named herein, and therefore are legally liable to Plaintiff. Plaintiff will set forth the true names and capacities of the fictitiously named Doe Defendants together with appropriate specific charging allegations when ascertained.

## JURISDICTION AND VENUE

2.1     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. section 1332(a) because the matter in controversy far exceed $75,000.00 exclusive of costs and it is between citizens of different states.

2.2     Specifically, with respect to Defendant Second Bite, on information and belief, this Defendant manufactured the adulterated and/or harmful food items that are the subject of this action, with knowledge that the products would be distributed into the interstate marketplace, including to consumers in the States of Virginia and New York.

2.3     On its website located at www.stonegate-foods.com, Defendant Second Bite, which does business under its federally registered trademark STONE GATE FOODS, advertises itself as "the go-to co-packaging facility and private label manufacturer for top brands throughout the United States." Defendant Second Bite knew, at all relevant times, that Defendant Daily Harvest was an online, subscription-based food manufacturing and delivery service with a national customer/client base. Defendant Second Bite has been in business for approximately 41 years, and states on its website, identified above, that it has "had the privilege to serve the retail, food service and private label customers throughout the country" for the entirety of this period.

2.4     As a result of its above-described knowledge, its intentional provision of specialty food manufacturing services to customers across the country, and its knowledge that the products that it manufactured for Defendant Daily Harvest would be distributed in the interstate marketplace, including to consumers in the State of New York, Defendant Second Bite has sufficient "minimum contacts" with the State of New York such that maintenance of this suit in this judicial district is appropriate, fair and just.

2.5     With respect to Defendant Smirk's, on information and belief, Defendant Smirk's supplied tara flour, the ingredient identified by Defendant Daily Harvest as the contaminant in the French Lentil + Leek Crumbles, which were identified as the source of the subject outbreak. Smirks did so with the knowledge that products containing that tara flour would be distributed into the interstate marketplace, including to consumers in the States of Virginia and New York.

2.6     On its website, located at www.smirks.com, Defendant Smirk's advertises "Just-in-time sourcing," claiming to store ingredients in one of its four warehouses across the United States, including one in Kearny, New Jersey, so that it can "get you the product when you need it, where you need it." Defendant Smirk's knew at all times relevant that Defendant Second Bite

was a manufacturer of food products for top brands throughout the US, and that the tara flour Defendant Smirk's sold would be used in food products manufactured to be sold nationwide.

2.7     As a result of its above-described knowledge; its intentional provision of specialty food ingredients to customers across the country; and its knowledge that the product sold to Defendant Second Bite would be distributed in the interstate marketplace, including to consumers in the State of New York, Smirk's has sufficient "minimum contacts" with the State of New York such that maintenance of this suit in this court is appropriate, fair, and just.

2.8     With respect to Defendant Molinos, on information and belief, Molinos supplied the subject tara flour to Defendant Smirk's, doing so with knowledge that this tara flour would be utilized, as an ingredient, in the production of foodstuffs for consumption by consumers in the United States interstate marketplace, including citizens of Virginia and New York.

2.9     On its website, https://molinosasociados.com/, Defendant Molinos prominently displays that its product are "USDA Organic" and "HACCP Certified", and that its tara flour is "the only purified Tara germ for human consumption in the market." Defendant Molino's sales of tara flour and similar plant protein-based ingredients for human consumption, on information and belief, focuses on the large United States marketplace for specialty health food products. Thus, together with its knowledge that Defendant Smirk's was a direct distributor to numerous specialty foods labels and manufacturers in the United States and abroad, Defendant Molinos knew that its tara products would be shipped throughout the U.S., including to customers in Virginia and New York.

2.10     As a result of its above-described knowledge; its intentional marketing of its unique tara product to U.S. customers; and its knowledge that the tara product sold to Defendant Smirks would be distributed in the U.S. interstate marketplace, including to consumers in the

State of New York, Molinos has sufficient "minimum contacts" with the State of New York such that maintenance of this suit in this court is appropriate, fair, and just.

2.11    Venue in the United States District Court of the Southern District of New York is proper pursuant to 28 U.S.C. section 1391(b)(1) because Defendant Daily Harvest's principal place of business is located within the district and because all defendants are subject to personal jurisdiction in this judicial district at the time of the commencement of this action.

## GENERAL ALLEGATIONS

### The 2022 Outbreak Linked to Daily Harvest French Lentil + Leek Crumbles

3.1    According to the U.S. Food and Drug Administration, on June 19, 2022, Defendant Daily Harvest instituted a voluntary recall of approximately 28,000 units of French Lentil + Leek Crumbles produced between April 28 and June 17, 2022.

3.2    More than 470 instances of consumers experiencing illness or adverse reactions after consumption of the French Lentil + Leek Crumbles have been reported. The consumption of Defendants' products has caused an array of serious health complications, from gastrointestinal illness to liver and gallbladder dysfunction.

3.3    Defendant Daily Harvest has stated that the approximately 28,000 units of the product were distributed to customers in the United States through direct online sale and through retail sales at stores in Chicago and Los Angeles. Defendant Daily Harvest also provided samples to a small number of customers and social media influencers.

3.4    The French Lentil + Leek Crumbles was a frozen, pre-made product packaged in a 12 oz. white pouch with the Daily Harvest logo at the top, "CRUMBLES" printed immediately below, and "French Lentil + Leek" printed in bold.

3.5     All lots of the French Lentil + Leek Crumbles product were ultimately recalled by Defendant Daily Harvest.

**Facts Relating to Defendant's Manufacture, Packaging, Distribution, and Sale of Harmful, Defective Food Products that Caused Plaintiff's Injuries**

3.6     On April 28, 2022, Defendant Daily Harvest announced the launch of the "Crumbles" product line, including the now-recalled French Lentil + Leek Crumbles.

3.7     Defendant Daily Harvest marketed these French Lentil + Leek Crumbles as a convenient, pre-made item that, after sauteing, can be added to other products, including those produced and marketed by the Daily Harvest, for a complete meal. Defendant Daily Harvest marketed the Crumbles as "planet-friendly to add more nourishing plant protein into" customers' diets.

3.8     Defendant Daily Harvest's promotional materials state (as quoted here) that a "team of chefs and nutritionists" created the French Lentil + Leek Crumbles recipe, and that the product was an "easy to prepare and ready in minutes" way to lower customers' carbon footprint, and potentially "help you live longer."

3.9     Defendant Daily Harvest claims to work directly with farmers to grow organic products and "increase biodiversity" while avoiding synthetic chemicals.

3.10     Defendant Daily Harvest distributes and sells directly all of its products, including the French Lentil + Leek Crumbles, to customers through online sales, through its own standalone retail stores in Chicago and Los Angeles. Additionally, Defendant Daily Harvest provides samples to a small number of customers, including social media influencers, to increase visibility and, ultimately, sales of the products.

3.11     The French Lentil + Leek Crumbles that Plaintiff consumed was adulterated and/or harmful and caused Plaintiff's injuries described below.

3.12    The French Lentil + Leek Crumbles consumed by Plaintiff contained adulterated and/or harmful ingredients, manufactured, packaged, distributed and/or sold by the Defendants, including Defendants Daily Harvest, Second Bite, Smirk's and Molinos.

3.13    The Defendants John Doe Corporations 1-5 are entities that either manufactured and distributed the French Lentil + Leek Crumbles product, or manufactured, distributed, imported, packaged, brokered, or grew and harvested the adulterated and/or harmful ingredients used in the manufacture of the French Lentil + Leek Crumbles product that caused Plaintiff's illness and the subject outbreak.

## Plaintiff's Illness

4.1    Plaintiff Francis Lopez consumed Defendant Daily Harvest's French Lentil + Leek Crumbles on or about May 16, 2022.

4.2    His wife purchased the crumbles product using her Daily Harvest account.

4.3    The next day, Mr. Lopez developed nausea, stomach pain, muscle aches, and a headache.

4.4    When his condition did not improve, he sought medical care at the Virginia Hospital Center Emergency Department on or about May 17, 2022.

4.5    Blood work performed at the hospital showed that Plaintiff had elevated liver enzymes.

4.6    He also sought medical treatment for his symptoms at Primary Care Arlington – VHC Physicians, and his primary care provider referred him to Gastro Health for follow-up treatment.

4.7    As of February 2023, Mr. Lopez feels he has physically recovered from his illness but continues to suffer from anxiety relating to his illness and his time at the hospital.

4.8     Plaintiff has sustained serious personal injuries; suffered, and will continue to suffer, significant pain and other physical discomfort; incurred, and will continue to incur, substantial medical expenses; and remains at risk for future health complications with damages far in excess of $75,000.00, the jurisdictional threshold of this court.

## CAUSES OF ACTION

### Strict Liability – Count I

5.1     Plaintiff repeats and realleges all of the above allegations contained in paragraphs 1.1 through 4.8.

5.2     At all times relevant hereto, the Defendants were the manufacturer, packager, distributor and/or seller of the adulterated and/or harmful food product that was purchased by Plaintiff's wife and consumed by Plaintiff.

5.3     The adulterated and/or harmful food product that the Defendants manufactured, packaged, distributed, and/or sold was, at the time it left the Defendants' control, defective and unreasonably dangerous for its ordinary and expected use by the intended public, including Plaintiff, because Defendants' product was adulterated and/or harmful to human health.

5.4     The adulterated and/or harmful food product that the Defendants manufactured, packaged, distributed, and/or sold was delivered to Plaintiff's wife without any change in its defective condition.   The adulterated and/or harmful food product that the Defendants manufactured, packaged, distributed, and/or sold was consumed by Plaintiff in the manner expected and intended.

5.5     The Defendants owed a duty of care to the public, including Plaintiff, to manufacture, package, distribute and/or sell food that was not adulterated and/or harmful, and that

was free of pathogenic bacteria or other substances injurious to human health.  The Defendants breached this duty.

5.6     The Defendants owed a duty of care to the public, including Plaintiff, to manufacture, package, distribute and/or sell food that was fit for human consumption, and that was safe to consume to the extent contemplated by a reasonable consumer.  The Defendants breached this duty.

5.7     As a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated and/or harmful food product that the Defendants manufactured, packaged, distributed and/or sold, as set forth above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

## Breach of Warranty – Count II

5.8     Plaintiff repeats and realleges all of the above allegations contained in paragraphs 1.1 through 5.7.

5.9     The Defendants are liable to the Plaintiff for breaching express and implied warranties that they made regarding its food product that Plaintiff's wife purchased and Plaintiff consumed.    These express and implied warranties include the implied warranties of merchantability and/or fitness for a particular use.    Specifically, the Defendants expressly warranted, through their sale of food to the public and by the statements and conduct of their employees and agents, that the food it manufactured, packaged, distributed and/or sold was fit for human consumption and not otherwise adulterated and/or injurious to human health.

5.10    The adulterated and/or harmful food product that Defendants sold and Plaintiff consumed would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability.

5.11    The adulterated and/or harmful food product sold to Plaintiff's wife was not fit for the uses and purposes intended, *i.e.,* human consumption; thus, the sale of this product to Plaintiff's wife constituted a breach of the implied warranty of fitness for its intended use.

5.12    As a direct and proximate cause of the Defendants' breach of warranties, as set forth above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

## <u>Negligence – Count III</u>

5.13    Plaintiff repeats and realleges all of the above allegations contained in paragraphs 1.1 through 5.12.

5.14    Defendants owed to Plaintiff a duty to use reasonable care in the manufacture, packaging, distribution, and/or sale of their food product, the observance of which duty would have prevented or eliminated the risk that Defendants' food product would become adulterated and/or harmful with any dangerous pathogen.  Defendants, however, breached this duty and were therefore negligent.

5.15    Defendants had a duty to comply with all federal, state and local statutes, laws, regulations, safety codes, and provisions pertaining to the manufacture, distribution, storage, and sale of its food product, but failed to do so, and were therefore negligent. Plaintiff was among the class of persons designed to be protected by these statutes, laws, regulations, safety codes and provisions pertaining to the manufacture, packaging, distribution, and sale of similar food products. Defendants, however, breached this duty and were therefore negligent.

5.16    Defendants had a duty to properly supervise, train, and monitor their respective employees, and to ensure that their respective employees complied with all applicable statutes, laws, regulations, safety codes, and provisions pertaining to the manufacture, distribution,

packaging, and sale of similar food products. Defendants, however, breached this duty and were therefore negligent.

5.17    Defendants had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, and free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances, regulations, codes, and provisions and that were clean, free from adulteration, and safe for human consumption. Defendants, however, breached this duty and were therefore negligent.

5.18    As a direct and proximate result of Defendants' negligence as described above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

## Negligence *Per Se* – Count IV

5.19    Plaintiff repeats and realleges all of the above allegations contained in paragraphs 1.1 through 5.18.

5.20    Defendants had a duty to comply with all applicable state and federal regulations intended to ensure the purity and safety of their food product, including the requirements of the New York State's Agriculture and Markets Law and the Federal Food, Drug and Cosmetics Act (21 U.S.C. § 301, *et seq.*).

5.21    In breach of this duty, Defendants failed to comply with the provisions of the health and safety acts identified above, and, as a result, were negligent *per se* in its manufacture, distribution, packaging and/or sale of adulterated food.

5.22    As a direct and proximate result of conduct by Defendants that was negligent *per se*, Plaintiff sustained injuries and damages in an amount to be determined at trial.

## DAMAGES

6.1     Plaintiff suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of Defendants, in an amount that shall be fully proven at the time of trial.  These damages include but are not limited to past and future pain and suffering, past and future damages for loss of enjoyment of life, past and future emotional distress, past and future medical and related expenses, including pharmaceutical expenses, travel and travel-related expenses, and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## JURY DEMAND

7.1     Plaintiff hereby demands a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against the Defendants as follows:

A.      Ordering compensation for all general, special, incidental, and consequential damages suffered by Plaintiff because of Defendants' conduct.

B.      Awarding Plaintiff costs and expenses, including reasonable attorneys' fees to the fullest extent allowed by law; and

C.      Granting all such additional and/or further relief as this Court deems just and equitable.

DATED:        February 27, 2023
              Rochester, New York

                              **HEISMAN NUNES & HULL LLP**

                      By:     /s/Paul V. Nunes
                              Paul V. Nunes, Esq.
                              Bar No.: PN2853
                              69 Cascade Drive
                              Suite 102
                              Rochester, New York 14614
                              Telephone:  (585) 270-6922
                              pnunes@hnhattorneys.com


                              **MARLER CLARK, LLP, PS**

                      By:     /s/ William D. Marler
                              William D. Marler, Esq., *pro hac vice* pending
                              The Standard Building
                              1012 1st Avenue, Fifth Floor
                              Seattle, Washington 98104
                              Telephone:  (206) 346-1888
                              bmarler@marlerclark.com

                              *Attorneys for Plaintiff*